## MARKS v. EMIGRANT INDUSTRIAL SAVINGS BANK.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

1. ADMINISTRATORS—FOREIGN APPOINTMENT.

F., having been a resident of Brooklyn prior to 1895, some time in that year entered a hospital in Jersey City, and remained there until August, 1896, when he returned to Brooklyn for a visit, and then disappeared leaving certain savings bankbooks, one of which showed a deposit in defendant bank, located in New York, with the managers of the hospital. In 1905, an administrator was appointed for F.'s estate in New Jersey, under New Jersey Act March 7, 1797, as amended by Act March 28, 1895 (P. L. p. 751), authorizing administration on the estates of absentees for a period of seven years. *Held*, that as there was no occasion for administration for the preservation of an abandoned estate in New Jersey, there being no property belonging to F. in that state, and there being no finding that F. was dead in fact, such administration did not entitle the administrator or his assignee to receive the deposits.

2. SAME—PAYMENT TO ADMINISTRATOR—FACT OF DEATH.

While a state under its police power may provide for administration on the estate of an absentee under proper safeguards for the protection of his interests in case of his return, payment to an administrator of such absentee, who is not in fact dead, is no defense as against him or his legal representatives.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 15–16.]

3. SAME—PROOF OF FACT—LETTERS OF ADMINISTRATION.

Letters of administration on the estate of an alleged deceased person do not establish even prima facie the fact of death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 15–16.]

4. SAME—EVIDENCE—SUFFICIENCY.

Where a savings bank depositor left the country and disappeared, the court, after the expiration of a sufficient time, could find that he was dead in fact, and could grant letters of administration on his estate.

Action by Morris B. Marks against the Emigrant Industrial Savings Bank. A verdict was directed in favor of plaintiff, and defend-

ant's motion for a new trial on exceptions was directed to be heard in. the first instance at the Appellate Division. Verdict set aside, and motion granted.

Argued before PATTERSON, P. J., and McLAUGHLIN,. LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Frederick S. Fisher, for plaintiff.

Richard O'Gorman, for defendant.

HOUGHTON, J. Prior to the year 1895 Patrick Flanagan was a resident of Brooklyn in this state. Some time in that year he went to Jersey City in the state of New Jersey, and shortly thereafter entered St. Francis Hospital in that city, in which he remained apparently until August, 1896, when he returned to Brooklyn, where he visited a brother for a short time, and disappeared, none of his relatives. having heard from or of him thereafter. Upon leaving the hospital he left in the custody of the managers three savings bank books, one of which was issued by the defendant.

In 1905 Joseph Flanagan, a nephew of Patrick, presented to the surrogate of the county of Hudson, the county in which Jersey City is situated, a petition, praying that letters of administration of the goods,. chattels, and credits of Patrick Flanagan, presumptively dead, should be issued to him or some proper person. Notice by publication, according to the New Jersey statute, was given, and the proceeding resulted, as is stated by the certificate, in the granting of "administration of the goods and chattels, rights, and credits which were of Patrick Flanagan (presumed under an act entitled 'An act declaring when. the death of persons absenting themselves shall be presumed,' passed March 7, 1797, as amended March 28, 1895, P. L. 1895, p. 751, to be dead), late of the county of Hudson, who died intestate," to the petitioner and another.

The proceeding for the appointment of administrators disclosed no., property in the state of New Jersey belonging to the alleged deceased,. his property consisting wholly of money in three savings banks shown to be located in the city of New York in this state.

In 1881 Patrick Flanagan had deposited with the defendant $2,096,. only a portion of the interest on which he had withdrawn from time to time, his last withdrawal of $20, being on December 10, 1895. One of the conditions upon which the deposit was made was that, upon the decease of the depositor, the amount to the credit of the deceased should be paid to his legal representatives. After their appointment,. the administrators presented copies of the proceedings of the Surrogate's Court of New Jersey on their appointment, together with the bankbook, to the defendant, and demanded payment to themselves of the deposit which Patrick Flanagan had made. The defendant declined to pay, on the ground that the copies of the proceedings in the Surrogate's Court were not properly exemplified, and, further, that the papers did not show on their face that Patrick Flanagan was dead,. and that such a payment would be no protection against a demand by Patrick if he should chance to be living. Thereupon the administrators assigned their claim to the plaintiff, who brought this action.

against defendant, which resulted in a direction of verdict in his favor, and a direction that the defendant's exceptions be heard in the first instance before this court.

We think the defendant's exceptions were well taken, and that the direction of a verdict in favor of plaintiff was erroneous, and that a new trial must be granted.

The proceeding had in the Surrogate's Court of New Jersey did not determine that Patrick Flanagan was dead, and the letters of administration issued therein were so issued because he was presumed to be dead under a statute of that state, providing that, when a person shall remain beyond sea or absent himself from that state, or from his last known place of residence, or conceal himself for seven years successively, he shall be presumed to be dead. Patrick Flanagan left no property in the state of New Jersey when he departed therefrom. Such property as he had was in the state of New York. The passbook was not property. It was a mere evidence of indebtedness against a resident of this state. That the book happened to be there is immaterial. Lavin v. Emigrant Industrial Savings Bank (C. C.) 1 Fed. 641, 18 Blatchf. 1. There was no occasion, therefore, for the granting of letters of administration for the preservation of an abandoned estate.

By virtue of its police power a state has the right to enact a law for administration on the assets of an absentee, creating proper safeguards for the protection of his interests in case of his return. Cunnius v. Reading School District, 198 U. S. 458, 25 Sup. Ct. 721, 49 L. Ed. 1125. In Roderigas v. East River Savings Institution, 63 N. Y. 460, 20 Am. Rep. 555, it was held that payment to an administrator of the estate of a person judicially determined to be dead, but who in fact was alive, was good as against such person or his legal representatives. This case was expressly overruled in Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896, as violating the fourteenth amendment of the Constitution of the United States, in that it deprived a person of his property without due process of law; and it has been expressly declared to be no longer the law of this state. Matter of Killan's Estate, 172 N. Y. 547, 557, 65 N. E. 561, 63 L. R. A. 95. The plaintiff insists that the letters of administration prove a legal death. They do not purport to show a finding of actual death, and even if they did they would not be proof of that fact. Proof of the probate of a will or the granting of letters of administration do not establish, even prima facie, the fact of death. Carroll v. Carroll, 60 N. Y. 121, 19 Am. Rep. 144. It is urged that Scott v. McNeal, supra, does not apply, because the person in that case who was presumed to be dead, and upon whose estate administration had been granted, was in fact alive and demanding restoration of his property. The principle however is the same. The contract of the defendant with Patrick Flanagan was that it would repay to him his deposit, and hold itself in readiness so to do as long as he should live, and pay only to his representatives on his decease. His actual decease has not been established. Title to the deposit held by defendant has not been transferred from him to the administrators by due process of law, and hence they could not assign it to the plaintiff. Payment to the administrators or

their assignee would not protect the defendant from a repayment to Patrick Flanagan if he should be alive and hereafter demand it.

In addition, there is very grave doubt whether the New Jersey court ever had jurisdiction to grant letters of administration of any kind. Patrick Flanagan left no property in that state, for the bank books were not property, and he did not die there. He was a resident of Brooklyn in this state, and went from there to the Jersey City Hospital, and on his discharge from that institution came back to Brooklyn, from which place he disappeared. Whatever property he left behind him was in this state, and it might well be said that if any administration should be granted because he had abandoned his estate, temporary letters should be issued in this state under the provisions of section 2670 of the Code of Civil Procedure. Of course the money on deposit with defendant does not belong to it, and there will come a time when it can be found as a fact that Patrick Flanagan is actually dead, and the money, if he does not in the meantime draw it, can be paid to those entitled.

On the proofs appearing in the record, however, we are of the opinion that the present action cannot be maintained, and that the direction of a verdict against defendant was error, and that it should be set aside and a new trial granted, with costs to the defendant to abide the event. All concur.