In the Matter of the Estate of HENRY W. ENGGREN, an Absentee.

Surrogate's Court, Kings County, May 21, 1940.

*George K. Jack,* for Florence E. Enggren, as temporary administratrix, etc., petitioner.

*E. Ivan Rubenstein*, special guardian for Henry W. Enggren, absentee.

*Fertig, Walter & Gottesman* [*Samuel Gottesman* and *James L. Walter* of counsel], for the Indemnity Insurance Company of North America, surety on petitioner's bond.

WINGATE, S.  The question here presented concerns the propriety of allowance of the claim of a wife (or widow) of an absentee against the net assets of such absentee now in the hands of his temporary administratrix.

As disclosed by the records in various proceedings in this court, the absentee, Henry W. Enggren married the petitioner, Florence E. Enggren, on June 7, 1900.  On April 15, 1905, the latter secured a decree of separation from the absentee which was expressly stated to be of a single year's duration only.

They had a child, Sarah Enggren, who died on April 24, 1930, leaving an estate amounting to a net sum of approximately $1,600, which was the remnant of an accident recovery of $4,155 against the Interboro Rapid Transit Company, received in May, 1916.

In the settlement of her estate it was demonstrated that her father, the present absentee, had decamped immediately following the entry of the judgment in the separation action and had not been heard of since 1910, and an effort was made to secure an adjudication of his death.  This was denied.

Florence Enggren, the mother and wife, thereupon applied for and secured the issuance of letters of temporary administration upon the estate of the absentee, and pursuant to decree dated November 26, 1938, the distributive share of the absentee in the estate of his daughter was paid over to her in that capacity.

She has now petitioned for the judicial settlement of her account as such temporary administratrix and has presented a claim against the fund for her support, which even computed only for the past six years at the modest rate of five dollars per week (which was fixed in the separation decree) would more than exhaust the assets in her hands.

The special guardian for the absentee has interposed certain objections to the testimony of the claimant in support of her claim, asserting that she is an incompetent witness under section 347 of the Civil Practice Act.  Obviously, this section applies only to testimony respecting personal transactions with a person who is incompetent or deceased.

The special guardian, however, points out that the temporary administratrix was appointed pursuant to subdivision 2 of section 126 of the Surrogate's Court Act, which enacts that a temporary

administrator may be appointed " where a person of whose estate the surrogate would have jurisdiction, if he were shown to be dead, disappears or is missing, so that, after diligent search, his abode cannot be ascertained, *and under circumstances which afford reasonable ground to believe either that he is dead, or that he has become a lunatic, or that he has been secreted, confined, or otherwise unlawfully made away with;* and the appointment of a temporary administrator is necessary for the protection of his property, and the rights of creditors or of those who will be interested in the estate, if it is found that he is dead." (Italics supplied.)

The special guardian argues with considerable logic that the mere fact of the appointment of the temporary administratrix must be deemed to have adjudicated that the allegations of the petition made out a *prima facie* demonstration that the absentee was dead or a lunatic, since, by application of the principle *noscitur a sociis*, the final portion of the italicized quotation from the statute is not reasonably construable as making any valuable addition to these two previous bases of jurisdiction. If this be so, it is obvious that, *prima facie*, the claimant is barred as a witness in support of her claim in so far as testimony respecting personal transactions with the absentee is involved therein.

It is a fact familiar to those who have studied the development of this particular phase of the law, that this subdivision was added to the section in an attempt to remedy situations similar to that adjudicated in *Scott* v. *McNeal* (154 U. S. 34, 47), which had held that the ordinary administration on the estate of an absentee was insufficient to confer jurisdiction on a court of decedent devolution to permit it to divert property which belonged to an absentee, who was not actually dead, to others, and that, upon his return, he could overturn the entire adjudication.

Following this determination, legislation was introduced in a number of States authorizing the courts to take into *custodio legis* the assets of an absentee where such assets needed protection or the rights of creditors indicated the propriety of such action. Jurisdiction over the *rem* of the property thus having been obtained, a valid adjudication in respect thereof was capable of rendition.

Unfortunately, the New York statute, here in issue, did not follow the pattern of those adopted in Massachusetts, Pennsylvania and a number of other States, but, by the italicized words, predicated the jurisdiction of the court on the situation of the absentee rather than on the necessity for conservation of the property and the rights of others therein. Hope may be expressed that this defect may ultimately be corrected.

The question here confronting the court, however, is how, under existing law, justice may be accorded to this wife, deserted almost two generations ago, against this defaulting husband who, if alive, has been unmindful of his obligations for over thirty-five years. Were he here present, her right to recover against him, to the extent of this fund, would be uncontrovertible. (*DeBrauwere* v. *DeBrauwere*, 203 N. Y. 460, 464; *Garlock* v. *Garlock*, 279 id. 337, 340; *Keller* v. *Phillips*, 39 id. 351, 354.) If he is dead, the fund belongs to her in any event as his distributee.

It is the opinion of the court that the problem is solvable on the precise language of section 347 of the Civil Practice Act. Under its terms, the claimant is an incompetent witness in her own behalf only " concerning a personal transaction or communication between the witness and the deceased person or lunatic." As to matters not within this description, she may testify.

At page 9 of the record the following appears: " Q. Mrs. Enggren, during the six years preceding July 6, 1938, did you expend at at least $5 a week toward the support of yourself? A. Yes. Q. Out of your own moneys? A. Yes." This testimony involves no personal transaction between the claimant and the absentee and when this is coupled with the determination made in the Supreme Court of the inception of the marriage status, which must be presumed to have continued (*Matter of Callahan*, 142 Misc. 28, 35, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524; *Matter of Auditore*, 136 Misc. 664, 672; affd., 233 App. Div. 740; *Matter of Goodchild*, 160 Misc. 738, 743; *Matter of Ferrara*, 165 id. 900, 902), there is enough, in the absence of any opposing demonstration, to bring the claimant within the doctrine of *DeBrauwere* v. *DeBrauwere* (*supra*).

Enter decree on notice in conformity herewith.